IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JAVIER FRANCISCO CINTRON-FIGUEROA, et al.,** <br><br> **Plaintiffs** <br><br> v. <br><br> **SERVICIOS DE SALUD EPISCOPALES, et al.,** <br><br> **Defendants** | **CIVIL NO.** 10-1008 (JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Before the Court is co-defendant Dr. Pura Maldonado Feliciano's Motion to Dismiss (Docket No. 46). For the reasons set forth below, the motion is hereby **DENIED**.

**PROCEDURAL BACKGROUND**

On January 11, 2010, Minor Javier F. Cintrón Figueroa, along with other members of his family, ("Plaintiffs") filed a complaint against Servicios de Salud Episcopales and several others, including Dr. Pura Maldonado Feliciano ("Dr. Maldonado"). (Docket No. 1). According to the Second Amended Complaint, plaintiff Javier F. Cintrón Figueroa was not afforded proper emergency screening and stabilization treatment in

violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §§ 1395dd *et seq*. (Docket No. 38, ¶¶ 24-36). Plaintiffs also claim the minor suffered damages as a result of medical malpractice under Puerto Rico law for failure to properly diagnose and treat his condition. Id. at ¶¶ 37-48.

On July 12, 2009, minor Javier F. Cintrón-Figueroa, who was 13 years old at the time, arrived with his mother at the emergency room of the Hospital Episcopal San Lucas Ponce. He complained of abdominal pain, vomiting and diarrhea. He was evaluated by co-defendant Dr. Panelli who took his medical history and recorded eight episodes of vomiting and three episodes of diarrhea. Id. at ¶ 14. A provisional diagnosis of acute gastroenteritis was made. He was later evaluated by either Dr. Panelli or Dr. Maldonado (now moving for dismissal) and a final diagnosis of acute gastroenteritis post vomiting was made. He was discharged but was not given instructions or a recommended diet. The discharge sheet did not record medication. Id.

While at home, the minor's condition worsened and the next day he returned to the hospital where he was evaluated by Dr. Maldonado. She noted in the record that he had been at the emergency room the previous night, had been given medication and discharged. Id. at 15. During the physical examination she noted

an abdomen with diffuse tenderness, guarding positive, tender to touch, psoas sign positive, distension positive and rebound positive. He was diagnosed with abdominal pain. She ordered X rays and abdominal and pelvic sonograms. Id. Later that day he was admitted to the pediatric ward by Dr. Lydia Irizarry González. Id. at ¶ 16.

The next day, on July 14, 2009, Dr. Irrizarry González decided to rule out the possibility of appendicitis and ordered a CT Scan and further tests. Id. at ¶ 17. The pediatric surgeon suspected a perforated appendicitis and the minor was operated. The final diagnosis was perforated appendicitis with peritonitis. Id. at ¶ 18. After the surgery, the minor's condition worsened due to pulmonary complications. Id. at ¶¶ 20-23.

On April 4, 2010, Dr. Maldonado filed the Motion to Dismiss pursuant to Fed.R.Civ.Proc. 12(b)(6) now pending before the Court. She alleges, in essence, that the Second Amended complaint does not state a claim against her for violations of EMTALA, and that, therefore, no jurisdiction exists. She states the allegations in the Second Amended Complaint show that the alleged malpractice was not committed by her and that Plaintiffs cannot invoke federal jurisdiction to pursue a state medical malpractice claim against her. (Docket No. 46, p. 10).

Plaintiffs filed a timely opposition. (Docket No. 59). They argue that the Second Amended Complaint contains sufficient well-pled allegations of violations of EMTALA's screening and stabilization dispositions to defeat Dr. Maldonado's motion.

**STANDARD OF REVIEW**

<u>Motion to Dismiss Standard of Review</u>

In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 599). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. See <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 51 (1st Cir. 1990). While <u>Twombly</u> does not require of plaintiffs a heightened fact pleading of specifics, it does require enough facts to have "nudged their claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Accordingly, in order to avoid dismissal, a plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court upheld <u>Twombly</u> and clarified that two

underlying principles must guide this Court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50.

The First Circuit has recently relied on these two principles as outlined by the Supreme Court. See Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950 (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Iqbal, 129 S.Ct. At 1950. Determining the existence of plausibility is a "context-specific task" which "requires the court to draw on its judicial experience and common sense." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to

relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 1950-51 (citing Twombly, 550 U.S. at 567).

## ANALYSIS

EMTALA was enacted in 1986 as a congressional response to the concern that uninsured, underinsured and indigent patients were being "dumped" onto other hospitals by hospitals who did not want to treat them. See Feighery v. York Hospital, 59 F.Supp.2d 96, 101-102 (citing Summers v. Baptist Medical Center Arkadelphia, 91 F.3d 1132, 1136 (8th Cir.1996)). The Act intended to create a new cause of action, separate from traditional state medical malpractice. Courts have routinely explained that EMTALA is not to be treated as a federal malpractice statute. See Feighery, 59 F.Supp.2d at 102; Fuentes Ortiz v. Mennonite General Hospital, 106 F.Supp.2d 327, 330 (D.P.R. 2000).

EMTALA has two key provisions: (1) hospitals must provide appropriate screening to emergency room patients; and (2) they must provide the services necessary to stabilize the patient's condition before release or transfer. See Alvarez-Pumarejo v. Municipality of San Juan, 972 F.Supp. 86, 87 (D.P.R.

1997)(citing Correa v. Hosp. San Francisco, 69 F.3d 1184, 1190 (1st Cir. 1995)).

The purpose of EMTALA is to bridge the gap not covered by state malpractice laws and to ensure that there be "some screening procedure, and that it be administered even-handedly." Correa, 69 F.3d at 1192. "A mere failure to provide medical treatment consistent with generally accepted medical standards is actionable under state tort law," not under EMTALA. Torres Otero, 115 F.Supp.2d at 260; see also Brooks v. Maryland General Hospital, Inc., 996 F.2d 708, 710 (4th Cir. 1993). To establish a violation of EMTALA's screening or stabilization provisions, a plaintiff must establish that:

> (1) the hospital is a participating hospital covered by EMTALA, that operastes an emergency department (or an equivalent facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition. Alvarez-Torres v. Ryder Mem. Hosp., Inc., 582 F.3d 47, 51 (1st Cir. 2009)(citing Correa, 69 F.3d at 1190).

In the case at bar, the allegations contained in the Second Amended Complaint, taken as true and in the light most favorable to the Plaintiffs, establish a cause of action against the hospital for violations of EMTALA. The well-pled allegations establish that minor Javier Francisco Cintrón-Figueroa arrived

Civil No. 10-1008 (JAG)                                                8

at the emergency room of Hospital San Lucas, a Medicare recipient and, hence, a hospital subject to EMTALA, seeking treatment and that he was not screened properly and he was bid farewell on July 12, 2009 without being stabilized. The complaint establishes that a proper differential diagnosis was not performed and that he was sent home without being appropriately stabilized and without instructions.

Plaintiff is correct in stating that allegations of EMTALA violations are not made against her as a physician. The civil enforcement provision of EMTALA only applies to participating hospitals. See 42 U.S.C. § 1395dd(d)(2)(A). The First Circuit has not yet pronounced itself regarding this proposition although in Alvarez-Torres, 582 F.3d at 53, it did not disturb the District Court's finding in this regard. Nonetheless, several courts have already directly ruled upon this issue. See Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1256 (9th Cir. 1995); King v. Ahrens, 16 F.3d 265, 271 (8th Cir. 1994); Delaney v. Cade, 986 F.2d 387, 393-94 (10th Cir. 1993); Baber v. Hospital Corp. of America, 977 F.2d 872, 878 (4th Cir. 1992); Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1040 n.1 (D.C.Cir. 1991); Millan v. Hosp. San Pablo, 389 F.Supp.2d 224, 235 (D.P.R. 2005); Lebron v. Ashford Presbyterian Comm. Hosp., 995 F.Supp. 241, 244 (D.P.R. 1998).

Civil No. 10-1008 (JAG)                                                      9

However, the fact that the complaint does not contain a federal law claim against Dr. Maldonado does not mean that the Court must automatically dismiss the case against her for lack of jurisdiction. This, because there is a state law claim against her that arises from the same nucleus of operative fact as the EMTALA claims. It is well established that, with certain exceptions not applicable here, "a federal court may exercise supplemental jurisdiction of state-law claims 'that are so related to claims in the action within [a court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Godin v. Schencks, 629 F.3d 79, 83 (1st Cir. 2010).

Here, the Second Amended Complaint sufficiently alleges a medical malpractice claim against Dr. Maldonado under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141 (2011). It states that Dr. Panelli and/or Dr. Maldonado re-evaluated Javier Francisco Cintrón Figueroa at 8:30 p.m. on July 12, 2009; the diagnosis was acute gastroenteritis status post vomiting; the discharge instructions were not check marked in any area; no recommended diet was recorded; no medication was recorded; no specific instructions were given; and no instruction regarding how to seek further assistance. (Docket no. 38, ¶ 14). Plaintiffs also allege that the next day, upon

his return to the hospital, the minor was again seen by Dr. Maldonado who recorded an abdomen with diffuse tenderness, guarding positive, tender to touch, psoas sign positive, distension positive and rebound positive, but failed to correctly diagnose his condition and order a CT scan to perform a differential diagnosis. Id. at 15. These allegations, taken in the light most favorable to Plaintiffs are sufficient to establish a claim and survive a motion to dismiss under Fed.R.Civ.Proc. 12(b)(6). The well pled facts regarding Dr. Maldonado's performance nudge Plaintiffs' "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Dr. Maldonado's Motion to Dismiss (Docket No. 46).


IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2011.


S/ Jay A. García-Gregory
JAY A. GARCÍA-GREGORY
United States District Judge