IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JAVIER FRANCISCO CINTRON-
FIGUEROA, et al.,

      Plaintiffs

         v.

SERVICIOS DE SALUD EPISCOPALES,
et al.,

      Defendants

CIVIL NO. 10-1008 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court is a Motion for Summary Judgment filed by Hospital Episcopal San Lucas (Docket No. 103). For the reasons set forth below, the motion is hereby **DENIED.**

## PROCEDURAL BACKGROUND

On January 11, 2010, Minor Javier F. Cintrón Figueroa, along with other members of his family, ("Plaintiffs") filed a complaint against Hospital Episcopal San Lucas ("HESL"), Dr. Pura Maldonado Feliciano ("Dr. Maldonado"), Dr. Lydia Irizarry González ("Dr. Irizarry"), Dr. José Panelli ("Dr. Panelli") and the Sindicato de Aseguradoras para la Subscripcion Conjunta de Seguros de Responsabilidad Médico-Hospitalaria ("SIMED").

Civil No. 10-1008 (JAG)                                                    2

(Docket No. 1). According to the Second Amended Complaint, when plaintiff Javier F. Cintrón Figueroa went to HESL's emergency room ("ER") on July 12, 2010 he was not screened and stabilized properly in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §§ 1395dd *et seq*. (Docket No. 38, ¶¶ 24-36). Plaintiffs also claim the minor suffered damages as a result of medical malpractice under Puerto Rico law for failure to properly diagnose and treat his condition. Id. at ¶¶ 37-48. A thorough summary of the facts alleged in the complaint may be found in the Opinion and Order issued on March 31, 2011. (Docket No. 90).

On June 24, 2011, HESL filed a Motion for Summary Judgment. (Docket No. 103). All other defendants filed motions to join HESL's request for summary disposition. (Docket Nos. 106, 107, 111, 114). The joinders were allowed. (Docket Nos. 110, 118).

In the motion, HESL argues that Plaintiffs have failed to establish that its obligations under EMTALA were not met, that no federal jurisdiction exists to entertain the supplemental law claims and that, therefore, dismissal of the entire case is warranted. Specifically, it argues that EMTALA's screening provisions were followed and that Plaintiffs' own expert admitted that the diagnosis of acute gastroenteritis reached during the first visit to the hospital is compatible with the

Civil No. 10-1008 (JAG)                                                    3

minor's symptoms. (Docket No. 103, p. 9). It also posits that
EMTALA's stabilization provisions were also met because the
symptoms with which the patient arrived had subsided by the time
he was discharged from the hospital. Id. at 11.

In their opposition, Plaintiffs argue that HLES violated
EMTALA's screening and stabilization provisions by not correctly
recording the symptoms presented by the minor and by sending him
home without stabilizing him. They contend that the nurse who
first triaged the minor at the emergency room failed to
correctly record his symptoms and that Dr. Panelli, the doctor
who examined him, failed to use the available ancilliary
services to determine the extent of the condition. They sustain
that, in the report prepared by Dr. Panelli, the words "no
guarding [1]" were inserted out of sequence, in a different
handwriting and could lead a fact-finder to conclude that they
were added later. According to them, the fact that the minor was
diagnosed with "severe supra-pubic pain since last night" by
another doctor the next morning demonstrates that he was not
screened properly initially and that he was sent home without
being stabilized.

---

[1] Abdominal Guarding is defined as, "[a] patient's action, often
involuntary, intended to protect something painful within the
abdomen (as an inflamed appendix) by tensing the abdominal
muscles. It occurs, e.g., when the physician presses on the
abdomen in the course of an examination." Attorneys' Dictionary
of Medicine A-10 (2007).

Civil No. 10-1008 (JAG)                                              4

## STANDARD OF REVIEW

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's favor." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before a Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment.

Civil No. 10-1008 (JAG)                                                    5

_Anderson_, 477 U.S. at 248. The opposing party must demonstrate "through submissions of evidentiary quality, that a trial worthy issue persists." _Iverson v. City of Boston_, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted). Moreover, on issues "where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." _United States v. Union Bank for Sav. & Inv.(Jordan)_, 487 F.3d 8, 17 (1st Cir. 2007) (citing _United States v. One Parcel of Real Property_, 960 F.2d 200, 204 (1st Cir. 1992)). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." _Forestier Fradera v. Municipality of Mayaguez_, 440 F.3d 17, 21 (1st Cir. 2006) (citing _Benoit v. Technical Mfg. Corp._, 331 F.3d 166, 173 (1st Cir. 2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts, as they are jury functions, not those of a judge. _Anderson_, 477 U.S. at 255.

## ANALYSIS

EMTALA was enacted in 1986 as a congressional response to the concern that uninsured, underinsured and indigent patients were being "dumped" onto other hospitals by hospitals who did

not want to treat them.   See Feighery v. York Hospital, 59 F.Supp.2d 96, 101-102 (D. Me. 1999)(citing Summers v. Baptist Medical Center Arkadelphia, 91 F.3d 1132, 1136 (8th Cir. 1996)). It was intended to create a new cause of action, separate from traditional state medical malpractice, and Courts have routinely explained that EMTALA is not to be treated as a federal malpractice statute.   See Feighery, 59 F.Supp.2d at 102; Fuentes Ortiz v. Mennonite General Hospital, 106 F.Supp.2d 327, 330 (D.P.R. 2000).

To establish a violation of EMTALA's screening or stabilization provisions, a plaintiff must prove that he or she arrived at the emergency department of a participating hospital seeking treatment and that it did not afford him or her appropriate screening to determine if there was an emergency medical condition or that the hospital bid him or her farewell without first stabilizing the emergency medical condition. Alvarez-Torres v. Ryder Mem. Hosp., Inc., 582 F.3d 47, 51 (1st Cir. 2009).

**1. The Screening Violation Claim**

EMTALA specifically states that "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency

department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists." 42 U.S.C.A. § 1395dd(a). Section (e)(1) defines emergency as, "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in" serious danger to the health of the individual, impairment of bodily functions or serious dysfunction of any bodily organ or part. 42 U.S.C.A. § 1395dd(e)(1)(A).

In Correa v. Hospital San Francisco, 69 F.3d 1184, 1192 (1st Cir. 1995), the First Circuit explained that courts had reached a consensus in a method to determine if screening is appropriate under EMTALA. It stated that, "[a] hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints." Correa, 69 F.3d at 1192. The court of Appeals, however, added that because EMTALA is not a malpractice statute, "a refusal to follow regular screening procedures in a particular instance contravenes the statute […] but faulty

screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute." Id. at 1192-1193.

HESL's contends that Plaintiffs have failed to show that it did not afford the minor a screening examination reasonably aimed at identifying his condition and that it failed to treat the minor as it treats all patients who present similar complaints. It avers that Plaintiffs' expert agrees that the diagnosis made by Dr. Panelli of the minor's condition could be compatible with acute gastroenteritis and that Plaintiffs' argument is centered on the standard-of-care afforded and not on whether it was discriminatory.

Plaintiffs, on the other hand, contend that as part of an appropriate medical screening, Dr. Panelli should have ordered an abdominal CT scan of the minor and consulted a pediatric surgeon because of the symptoms he presented. Instead, they posit, the minor was afforded a cursory and substandard evaluation that led to sustain serious injuries. The Court must, therefore, determine if there are uncontested facts that could allow it to find, as a matter of law, if HELS's failure to detect the minor's condition during the first ER visit amounts to an EMTALA violation or to a medical malpractice case.

Civil No. 10-1008 (JAG)                                                    9

During his deposition, the minor testified that when he arrived at the ER he complained of severe pain in his abdomen and that he did not allow anyone to touch the area. (Plaintiffs' Opposing Statement of Material Facts, Docket No. 120, ¶ 2). It is uncontested, as evidenced by the Triage form completed by the nurse, that only vomiting was recorded during the first visit to the ER. (Docket No. 119, Exhibit 1). However, when Dr. Panelli examined him shortly thereafter, abdominal pain, eight episodes of vomiting and three episodes of diarrhea were recorded. (Docket No. 119, Exhibit 5). According to Plaintiffs' expert's unsworn statement, when a patient such as the minor in this case has severe abdominal pain, a surgical abdomen exists and, therefore, an emergency medical condition occurs which requires a CT-Scan and examination by a pediatric surgeon. (Docket No. 19-5, Exhibit 3, ¶ 10).

After a careful review of the parties' arguments and the evidence submitted in support, the Court considers that there are triable issues of fact regarding whether the screening performed during the first ER visit was "reasonably calculated to identify critical medical conditions," as required by EMTALA. Correa, 69 F.3d at 1192. The evidence before the Court demonstrates that there are issues of fact regarding the severity of the minor's abdominal pain, a material fact since

Civil No. 10-1008 (JAG)                                                    10

the presence of severe pain constitutes an emergency pursuant to
42 U.S.C. § 1395dd(e)(1). It is significant that HELS does not
deny that the minor suffered from pain when he visited the ER
for the first time, but argues that his chief complaint was
vomiting, which was allegedly treated with medication. (Docket
No. 103, p. 11).

Along the same line, whether the minor was guarding or not
guarding is an issue of material fact that precludes summary
judgment since it also hinges on the question of the
reasonableness of the means employed to screen for his
condition. Plaintiffs' expert states that the words "No
guarding" were added out of sequence to the ER report and that
said note is incompatible with the other symptoms presented by
the minor, whose chief complaint was severe pain. A cursory
examination of the document in question also leads the Court to
believe that a reasonable jury might agree with Plaintiffs'
expert. However, it is not for this court to make credibility
determinations, weigh the facts or make legitimate inferences
from the facts, as they are jury functions. Anderson, 477 U.S.
at 255.

Furthermore, the Court cannot find, as the record stands,
that Plaintiffs' expert conceded that the minor was screened
properly simply because he stated in his deposition that the

Civil No. 10-1008 (JAG)                                              11

clinical picture reflected in the record may be compatible with
gastroenteritis. HELS submits a single page from the transcript
of the expert's deposition. The page, which ends with a question
that hinges on a material issue of fact but, conveniently for
defendant, it did not include the answer offered by the expert.
The transcript states,

> Q. And is that clinical picture compatible with a
> gastroenteritis?
>
> A. It may be.
>
> Q. Okay. And within your exercise and clinical
> judgment did you determine the studies and the
> medication to offer him for the condition that
> you were evaluating?
>
> A. He did not do studies.
>
> Q. Did some study [sic] have to be made in order
> to confirm the presence of gastroenteritis?
>
> [End of page] (Docket No. 117-2, Exhibit 15).

If HELS had made a reasonable attempt at providing the
Court with enough of the transcript for it to have a clear
picture of what Plaintiffs' expert said during the deposition,
it may have been able to determine if he in fact conceded that
screening was proper. However, the Court cannot latch on to the
single phrase "[i]t may be." Especially since the expert's
affidavit is clear regarding his opinion about the presence of a
surgical abdomen.

Civil No. 10-1008 (JAG)                                          12

It is, therefore, for the jury to determine if the minor suffered from severe pain and whether he was guarding because of it, whether the medical personnel failed to employ reasonable means to ascertain what the cause of his emergency was and whether that failure amounts to medical malpractice or an EMTALA violation.

It would have been a very different scenario if any ancilliary services would have had been employed to ascertain what was causing the minor's abdominal pain, even if the results of those studies led to a wrong diagnosis. However, since it appears that no tests were performed using HESL's ancilliary services, the Court is unable to determine, at this point, whether all reasonable efforts were made to determine what was the minor's condition and whether the failure to detect the severity of his condition is due to a faulty diagnosis alone or to a refusal to follow regular screening procedures.

**2. The Stabilization Violation Claim**

EMTALA also requires that if a person comes to a hospital with an emergency medical condition the hospital must provide, "(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in

accordance with subsection (c). 42 U.S.C.A. § 1395dd(a)(b)(1).
Because EMTALA is an 'anti-dumpling' statute "transfer" means
both discharge and transfer to another facility. Alvarez-Torres
v. Ryder Mem. Hosp., Inc/ 582 F.3d 47 (1st Cir. 2009).

        In Fraticelli-Torres v. Hosp. Hermanos, 300 Fed. App. 1
(1st Cir. 2008), the First Circuit upheld a summary judgment in
a case where a man was admitted to a hospital after suffering
myocardial infarction and died several days later when he was
being transferred to another hospital. The court stated that,
"[t]he stabilization obligation does not impose a standard of
care prescribing how physicians must treat a critical patient's
condition while he remains in the hospital, but merely
prescribes a precondition the hospital must satisfy before it
may undertake to transfer the patient to another hospital." Id.
at 4. It noted that, "EMTALA only imposes a requirement that,
before ordering any inter-hospital transfer, hospitals stabilize
critical medical conditions of which, after reasonable screening
procedures, they become aware." Id. at 6 (citing Reynolds v.
MainGeneral Health, 218 F.3d 78, 85 (1st Cir. 2000)). In
Reynolds, the First Circuit stated that EMTALA "requires
stabilization of only those conditions that a participating
hospital has determined to be emergencies." Reynolds, 218 F.3d
at 85. The Court must, therefore, determine whether HESL

Civil No. 10-1008 (JAG)                                                14

stabilized the minor's condition of which it was aware, or should have been aware of, after employing reasonable screening procedures.

However, since the Court, as discussed above, finds that there are triable issues of fact regarding whether or not HESL employed reasonable methods to screen the minor, it follows that it cannot be determined at this point if, as a matter of law, he was stabilized before being sent home. It is noted, that the ER evaluation sheet indicates that he was stable and that his condition on discharge was "with same symptoms." (Docket no. 119-7, Exhibit 5). Hence, if a reasonable jury were to find that the minor was not screened as required by EMTALA it could also reasonably find that he was sent home without being stabilized.

It is noted that this case is clearly distinguishable from Torres-Fraticelli, where the patient died after being treated for several days and was being transferred to another hospital to undergo surgery. It is also clearly distinguishable from Reynolds where a patient suffered a car accident, injured his legs, developed deep veinous thrombosis at some point and died of a pulmonary embolism several days after being discharged. Plaintiffs in that case alleged that the failure to ascertain the risk of the development of clots constituted a failure to

Civil No. 10-1008 (JAG)                                                    15

stabilize within the meaning of EMTALA, an interpretation which the First Circuit refused to endorse.

Given that the Court finds there are material issues of fact that preclude summary judgment and since HESL did not address the merits of Plaintiffs' state law claims in its motion, the Court is not in a position to consider if summary judgment of the supplemental claims is proper.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** HESL's Motion for Summary Judgment. (Docket No. 103).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of August, 2011.

                                        S/ Jay A. García-Gregory
                                        JAY A. GARCÍA-GREGORY
                                        United States District Judge